**Opinion filed August 9, 2012**



# In The

# Eleventh Court of Appeals

_____

## No. 11-10-00354-CR
_____

## WAYNE EDWARD ALLEN, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 14276A**

## M E M O R A N D U M   O P I N I O N

The jury convicted Wayne Edward Allen of engaging in organized criminal activity. The trial court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty years. The trial court additionally assessed a fine of $10,000. Appellant challenges his conviction in a single point of error. We affirm.

*Background Facts*

Texas Ranger Michael Don Stoner worked as a narcotics agent in Palo Pinto and Parker Counties in the fall of 2009 for the Criminal Investigation Division of the Texas Department of

Public Safety. While working undercover on September 11, 2009, he entered Jackie Lynn Smith's residence to purchase narcotics. Ranger Stoner encountered Robert Earl Jefferson Jr. at Smith's residence. Ranger Stoner sought to purchase $200 worth of crack cocaine from Jefferson. Ranger Stoner testified that, while he and Jefferson were completing the transaction, Jefferson recognized him as a former classmate from high school. Ranger Stoner and Jefferson had a discussion away from the others wherein Ranger Stoner asked Jefferson not to reveal his identity to the others. Ranger Stoner also asked Jefferson to contact him later for the purpose of getting Jefferson to assist Ranger Stoner in his investigation.

Jefferson contacted Ranger Stoner on November 13, 2009, to provide information about the distribution of crack cocaine in the Mineral Wells area. Ranger Stoner testified that Jefferson provided him with the names of the individuals involved. Jefferson also identified the vehicles used in the distribution process, and he informed Ranger Stoner that the drugs were being obtained in Fort Worth. Jefferson also told Ranger Stoner the route that the suspects would take to and from Fort Worth.

Jefferson subsequently contacted Ranger Stoner on November 16, 2009, to inform him that Smith, Isidore Krishna Bridgeforth, and Brian Dukes would be going that day to purchase cocaine in Fort Worth. Jefferson further advised Ranger Stoner that the suspects would be driving a maroon Dodge pickup. Upon receiving this information, Ranger Stoner set up surveillance on Smith's residence in Mineral Wells. He observed Bridgeforth and Dukes loading Smith into the Dodge pickup that Jefferson had described. Ranger Stoner knew Bridgeforth and Smith on sight. Smith needed their assistance getting into the vehicle because he was handicapped.

Ranger Stoner and two other undercover narcotics agents conducted "moving surveillance" on Smith, Bridgeforth, and Dukes as they first ran some errands in Mineral Wells. The suspects then exited Mineral Wells on FM 1195 driving through Millsap to Interstate 20 and then to Fort Worth. After making several stops in Fort Worth, the suspects drove to a residence on Harlem Street in Fort Worth. Ranger Stoner testified that the residence belonged to appellant. He observed Bridgeforth and Dukes meeting with appellant in appellant's front yard.

The agents lost surveillance of Smith, Bridgeforth, and Dukes afterwards. Based upon information provided by Jefferson, Ranger Stoner and the agents drove back toward Mineral Wells on Interstate 20 in an attempt to reestablish surveillance. Ranger Stoner observed the

Dodge pickup near the Brock exit. Ranger Stoner passed the suspects in the process of catching up to them. He observed Bridgeforth driving the pickup. Ranger Stoner exited Interstate 20 via the Brock exit, and the suspects did as well. While Ranger Stoner proceeded toward Millsap, the suspects turned onto Fairview Road. Ranger Stoner dispatched another agent to follow the suspects.

Bridgeforth subsequently failed to negotiate a curve on Fairview Road, resulting in the pickup striking a tree. When agents arrived on the scene of the accident, Bridgeforth and Dukes were standing outside the pickup. Agents found a crack pipe in a nearby ditch and a rock of crack cocaine in the bed of the pickup near the area where Bridgeforth was standing. While agents arrested Bridgeforth for possession, Ranger Stoner spoke with Dukes away from the others. Dukes told Ranger Stoner that the group had acquired drugs in Fort Worth. Dukes also voluntarily removed a package containing crack cocaine from his sweatpants and gave it to Ranger Stoner. Ranger Stoner did not arrest Dukes at that time. Agents also did not arrest Smith. Instead, ambulance personnel transported Smith to the hospital for evaluation.

Dukes came to see Ranger Stoner on November 17, 2009, to be interviewed. Dukes agreed at that time to inform Ranger Stoner if anyone affiliated with Smith returned to Fort Worth for more drugs. Dukes called Ranger Stoner on November 19, 2009, to tell him that a group planned to return that day to Fort Worth for more drugs. Ranger Stoner established surveillance on Smith's residence at that time. He subsequently observed Billy Ray Herring loading Smith into a white Dodge pickup. Ranger Stoner also observed Wilbert Ratliff accompanying Smith and Herring in the pickup.

Ranger Stoner and other agents followed the suspects' vehicle to Fort Worth. They observed the suspects pulling into a church parking lot near appellant's residence. While Herring looked under the hood of the pickup, Ratliff walked across the street to appellant's house. Ranger Stoner testified that Ratliff was observed meeting with appellant. After Ratliff walked back to the pickup, the suspects drove back to Mineral Wells with Ranger Stoner and the agents following them.

As the suspects entered Mineral Wells, Ranger Stoner requested State Trooper Donnie Wright and Mineral Wells Police Officer Scott Mitcham to stop them. Trooper Wright stopped the vehicle for speeding. Trooper Wright initially spoke with Herring outside the vehicle. Trooper Wright subsequently removed Ratliff from the vehicle. Trooper Wright made the

3

decision to arrest Ratliff when he found a crack pipe on him. As Trooper Wright was handcuffing Ratliff, Ratliff threw a baggie of crack cocaine into a nearby ditch. Trooper Wright permitted Herring and Smith to leave, and he transported Ratliff to the DPS office for Ranger Stoner to interview him. Ratliff told Ranger Stoner that the drugs that he threw in the ditch came from appellant.

Ranger Stoner described appellant's role in the organization as the supplier of the crack cocaine. Ranger Stoner testified that Smith served as the connection to the source and supply. Smith also orchestrated the transport of crack cocaine from Fort Worth and its distribution in Mineral Wells. Ranger Stoner described the roles of Bridgeforth, Ratliff, Dukes, Herring, and Jefferson as assisting with the transport and distribution of crack cocaine in Mineral Wells. Ranger Stoner testified that the maroon Dodge pickup in which Bridgeforth, Dukes, and Smith traveled on November 16 belonged to appellant and that appellant provided it to Smith to use in traveling back and forth between Mineral Wells and Fort Worth.

Jefferson testified that appellant initially delivered cocaine to Smith at his residence in Mineral Wells and that he did so often. Jefferson also testified that appellant provided Smith with the maroon Dodge pickup for the purpose of transporting the cocaine from Fort Worth to Mineral Wells. Jefferson stated that he, Bridgeforth, Dukes, Ratliff, and Herring hung out at Smith's residence and that the money gleaned from the sale of cocaine went into Smith's wallet.

Dukes testified that Smith provided him with a place to stay and drugs on a daily basis. He admitted to traveling with Smith and Bridgeforth to Fort Worth on November 16 to purchase cocaine from appellant. Dukes testified that Smith accompanied them because it was his money and he was the one purchasing the cocaine. Bridgeforth got the money from Smith to purchase the drugs, and he put the cocaine in Smith's coat pocket after the transaction occurred. Dukes removed the drugs from Smith at Smith's request after the wreck occurred. Dukes admitted to possessing the drugs when the officers arrived at the scene of the wreck.

When Dukes visited with Ranger Stoner the next day, he told Ranger Stoner about the organization and said that Smith was the "kingpin." Dukes testified that everyone helped Smith because of his handicap. He stated that the group would go to Fort Worth several times a week to resupply and that he went along on several occasions. Dukes testified that Smith wanted to make the trip on November 19, 2009, to replace the drugs that were lost when Dukes was arrested on November 16, 2009. Dukes also testified that he had observed appellant coming to

4

Smith's residence on several earlier occasions to deliver cocaine to Smith and that appellant gave the maroon Dodge pickup to Smith so that appellant would not have to come to Mineral Wells.

Ratliff testified that he lived with Smith because he needed a place to stay and Smith needed assistance. Ratliff stated that Smith compensated him with a place to stay and later crack cocaine. Ratliff testified that Smith contacted Herring on November 19 so that they could use his pickup to travel to appellant's residence in Fort Worth. Ratliff testified that Smith accompanied them on November 19 because "[h]e's the man that took care of the business, you know." Ratliff stated that they called appellant while en route and that he met appellant at his door for the transaction. Ratliff also testified that Smith gave him the money to purchase the drugs.

### Underlying Proceedings

The grand jury indicted appellant, Smith, Bridgeforth, Herring, and Ratliff for engaging in organized criminal activity. The indictment alleged that they collaborated in a combination to carry out a conspiracy to possess cocaine with the intent to deliver. *See* TEX. PENAL CODE ANN. § 71.01 (West 2011), § 71.02 (West Supp. 2012). Appellant, Smith, and Bridgeforth were tried together. The jury convicted all three of engaging in organized criminal activity.[1]

### Point of Error

In order to commit the offense of engaging in organized criminal activity, the actor must not only agree to participate in a criminal combination but must also perform some overt act in furtherance of that agreement. *Barber v. State*, 764 S.W.2d 232, 235 (Tex. Crim. App. 1988). The indictment alleged that appellant performed an overt act in pursuance of the agreement by delivering a quantity of cocaine to Ratliff on or about November 19, 2009, in Tarrant County. In a single point of error, appellant contends that Ratliff's testimony on this matter was not sufficiently corroborated.

### Analysis

Article 38.14 of the Code of Criminal Procedure provides that a conviction cannot be upheld on the basis of accomplice testimony unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). In reviewing the sufficiency of the corroborating evidence, we eliminate the

---

[1]Smith's appeal is docketed as Cause No. 11-10-00355-CR, and Bridgeforth's appeal is docketed as Cause No. 11-10-00356-CR.

accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). A defendant's mere presence at the scene of the crime is by itself insufficient corroboration; however, presence combined with other suspicious circumstances may be enough to tend to connect the defendant. *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Similarly, evidence that the defendant was in the presence of the accomplice at or near the time or place of the offense is proper corroborating evidence. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997).

Appellant directs his challenge under Article 38.14 at Ratliff's testimony pertaining to the evidence of the alleged overt act involving him. As correctly determined by the trial court, Ratliff was an accomplice as a matter of law because he was a person who participated before, during, or after the commission of the crime. *See Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). Accordingly, the corroboration requirement of Article 38.14 applied to his testimony.

Ranger Stoner provided the bulk of the non-accomplice testimony in this case. He testified that he observed Smith, Herring, and Ratliff leave Smith's house on November 19 in the same vehicle. He testified that the agents followed them to the church parking lot near appellant's residence and that Ratliff "was observed" meeting with appellant. On cross-examination by appellant's trial counsel, Ranger Stoner testified that Sergeant Cartwright was the agent that observed Ratliff at appellant's residence and saw Ratliff meet with a "heavyset black male." There are numerous references in the record that appellant was referred to as "Big Man." Additionally, Ranger Stoner testified that crack cocaine was recovered from Ratliff when he returned to Mineral Wells.

The non-accomplice testimony in this case sufficiently connected appellant to the commission of the charged crime as well as the alleged overt act. The direct or circumstantial non-accomplice evidence is sufficient corroboration if it shows that rational jurors could have

found that it sufficiently tended to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011); *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). We defer to the factfinder's resolution of the evidence in making this determination. *Smith*, 332 S.W.3d at 442; *Simmons*, 282 S.W.3d at 508. Ranger Stoner's testimony tended to connect appellant to the overt act because it placed Ratliff at appellant's home under suspicious circumstances in the company of other participants engaging in the organized criminal activity. Accordingly, there was sufficient evidence corroborating Ratliff's testimony that appellant delivered cocaine to him on November 19. Appellant's sole point of error is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


August 9, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.